**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**Jerald.E.Gilbert@tn.gov**

August 06, 2012

*201770 PA*
*CLOSED*

Alfa Alliance Insurance Corporation
P O Box 2460
Glen Allen, VA 23058
NAIC # 18791

Certified Mail
Return Receipt Requested
7011 2970 0003 4363 7238
Cashier # 4559

Re:  James Miller  V.  Alfa Alliance Insurance Corporation

Docket # 14397

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of
Commerce and Insurance was served August 06, 2012, on your behalf in connection with the
above-styled proceeding.  Documentation relating to the subject is herein enclosed.

Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
    Maury County
    Courthouse, Rm 202
    Columbia, Tn 38401



**RECEIVED**

AUG 13 2012

ALFA ALLIANCE INSURANCE CORP.
GLEN ALLEN, VA

**EXHIBIT**

tabbies

1

SUMMONS

# STATE OF TENNESSEE
## MAURY COUNTY

### CIRCUIT COURT AT COLUMBIA, TENN.

IF YOU HAVE A DISABILITY & REQUIRE ASSISTANCE, PLEASE CONTACT 931-375-1100

_James Miller_

Plaintiff

Number _14397_

VERSUS

CIRCUIT COURT
SUMMONS

_ALFA Insurance, a/k/a ALFA Alliance Insurance Corporation_

Defendant

TO _ALFA Insurance, a/k/a ALFA Alliance Insur. Corp. c/o TN Comm. Insur._

Defendant in the above entitled civil action:

You are hereby summoned, and required to serve upon _MATT Q. BASTIAN_
plaintiff's attorney whose address is _2488-B Park Plus Drive Columbia TN_
an answer to the _Complaint_
which is herewith served upon you within thirty (30) days after service of this summons upon you, exclusive of the day of service. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney.

In case of your failure to defend this action by above date, judgement by default can be rendered against you for the relief demanded in the complaint.

Attested to on date issued _____   KATHY KELLEY

Circuit Court Clerk

Issued: _8-2-2012_   By: _a Oneal_

D.C.

---

NOTICE

TO THE DEFENDANT (S):

Tennessee law provides a four thousand dollar ($4,000.00) personal property exemption from execution or seizure to satisfy a judgement. If a judgement should be against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgement becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

---

ATTORNEY FOR PLAINTIFF _Matt Q. Bastian_

ADDRESS _2488-B Park Plus Drive, Columbia TN_

OR

PLAINTIFF'S ADDRESS _931-446-4514_

TO THE SHERIFF:

Please execute this summons and make your return hereon as provided by law.

KATHY KELLEY

Circuit Court Clerk

Received this summons for service this _____ day of _____

CIR-02

SHERIFF

*Ins. Comm. Copy*

IN THE CIRCUIT COURT FOR MAURY COUNTY, TENNESSEE
AT COLUMBIA

JAMES MILLER }
Plaintiff, }
}
}
*Versus* }   Civil Action #: 14397
}   (Jury Demand)
}
ALFA Insurance, a/k/a: }
ALFA Alliance Insurance Corporation }
Defendant. }

2012 AUG -2 PM 12:00

FILED
KATHY KELLEY, CIRCUIT CLERK
MAURY COUNTY, TN

STATE OF TENNESSEE   MAURY COUNTY
I, the undersigned clerk, do hereby certify that
this is a true and correct copy of the original
of this instrument. This ___ day of
*august* ___
Circuit Court Clerk

## COMPLAINT

COMES JAMES MILLER, Plaintiff, and submits the following action against the Defendant, ALFA Insurance.

Introduction: Plaintiff purchased a policy of insurance for his primary residence (a home-owner's policy) from the Defendant. However, when Plaintiff suffered nearly $100,000 in storm related damages to the residence, Defendants wrongly breached their duty to the Plaintiff. Plaintiff's cause for action includes a demand for specific performance, breach of contract, and consequential damages including lost opportunity, and other related theories of recovery.

### The Parties

1.     Plaintiff James Miller, {hereinafter Plaintiff/Plaintiff Miller} is an individual and a single person, and, a resident of Maury County residing at 628 Transit Avenue, Columbia, Tennessee;

2.     Defendant ALFA Insurance, a/k/a: ALFA Alliance Insurance Corporation, {hereinafter Defendant/Defendant Alfa} is a foreign corporation, whose principal office is believed to be in the State of Virginia, and was, for all purposes relative to Plaintiff's lawsuit, found doing business in Maury County, Tennessee; pursuant to T.C.A. § 56-2-502, their registered agent is Insurance Comissioner,  500 James Robertson Parkway, Nashville, TN 37243.

### Venue and Jurisdiction

3.     Plaintiff's cause for action sounds in breach of contract and certain claims for unliquidated damages in tort that were foreseeable under the circumstances, all of which arose out of the parties' contractual relationships , therefore, venue and jurisdiction are properly before this Court;

1

## Facts, Acts, and Circumstances

4.     Plaintiff Miller purchased a home-owners policy of insurance from the Defendant, Policy #: HOT 0304179 04, effective as of 05/18/2012 @ 12:01 a.m. {hereinafter the 'policy of insurance'}; See Exhibit A, Policy of Insurance;

5.     It was the specific intent of the parties that the policy of insurance would insure the Plaintiff's residence at 628 Transit Avenue, Columbia, Tennessee during the period of coverage for losses, including storm related damages;

6.     The parties specifically understood that the Plaintiff's residence was an older home constructed beginning in the early 1930s and had been added onto from time to time by the previous owner(s) and that the Defendant knew or should have known that structures built in the 1930s were constructed with components very different from components integrated into structures constructed in 2011;

7.     The Plaintiff at all times tendered good and valuable consideration for the policy of insurance and the Defendant accepted the tendered good and valuable consideration;

8.     Columbia, Tennessee in August, 2011 at the Transit Avenue area suffered a severe storm to the end that an extremely large tree blew over and three main sections or branches (each of which individually were as large as a tree) were blown over and with incredible force were hurled down and onto the insured residence owned by the Plaintiff, crushing the residential structure; pushing the residential structure; and thereby causing great and considerable roof damage, internal structural damage, load bearing/foundational damage, and extensive water damage;

9.     Plaintiff's residence suffered visual and hidden damages. Hidden damages were those that would not necessarily be visible until a 'tear out' of visible damages had been completed. Hidden damages included: extensive water infiltration; buckled floors, walls joists, ceiling joists, dry-wall failure, insulation damage, shifting of ceiling and wall joists proximately caused by the shear-load and velocity of the tree falling onto the residential structure (a more extensive listing will be provided at a trial of this cause for action);

10.     Plaintiff's residence suffered additional 'hidden' damages', i.e. the uniqueness of the insured premises was in part the existing design of the residence itself. The damage to the entire roof system and the lay-out of the roof system since the 1930s was such that to re-build the system to comply with 2011 building codes and the cost thereof, necessitated a new roof system design. Plaintiff employed such a new roof system design, which was more practicable, more cost-effective, and that complied with current building codes;

11.     Defendant was aware or should have been aware of the extensive damages suffered by the Plaintiff to his residence as a proximate result of the storm damage, i.e. that

2

hidden damage proximately caused by the tree would not be readily identifiable or subject to exact calculus (i.e. damages) until after a complete 'tear-out' had been performed;

12.    Defendant was aware or should have been aware that additional hidden damages to the residential structure were foreseeable and anticipated and that such additional hidden damages could not be identified or identifiable until a complete 'tear-out' of visible damages were complete;

14.    The 'tear-out' of visible damages was necessary and reasonable under the circumstances of the extent of damages Plaintiff's residential structure suffered.

15.    The Plaintiff is and at all times relevant to this cause for action self-employed as a contractor and Plaintiff advised the Defendant that Plaintiff would employ himself (the Plaintiff) as the contractor to repair, remediate, and rebuild the demised residential premises covered by the policy of insurance.  Defendant never objected to Plaintiff's notice to the Defendant that Plaintiff would rebuild his own premises.

16.    Due to the unique architecture of the residential premises and the extent of damages the premises suffered, Plaintiff elected to add a second story to the demised section of the residential structure in order to properly rebuild the structure and comply with the prevailing building codes.  Plaintiff paid 100% of all expenditures relative to the building of and the addition of the second story out of Plaintiff's money, unassociated with any funds received from the Defendant pursuant to the insurance policy coverage;

17.    Plaintiff has provided the Defendant with a listing of 'hidden damages' that have been identified following the 'tear-out'.  However, Defendant has failed and or refused to pay to the Plaintiff the benefit of Plaintiff's bargain relative to the insurance coverage.  Plaintiff has suffered an insurable claim in an amount just less than $100,000 {One Hundred Thousand}, including: HVAC damages, insulation damages, dry-wall damages, structural damages, wiring damages, etc., for all of which the Defendant has only paid the Plaintiff approximately $43,000;

18.    Upon information and belief, Plaintiff alleges that Defendant sent an under-qualified representative to the Plaintiff's demised premises to create an estimate of damages that failed to properly define the extent of damages the Plaintiff suffered.    The estimator representative of the Defendant insurer estimate of damages either intentionally or negligently under-valued the extent of actual damages to the Plaintiff's structure in order to lessen the exposure of the Defendant and thereby under-cut Plaintiff's claim for 'repair or replacement' of the demised premises. The Defendant estimator intentionally or negligently ignored or disallowed 'hidden-damages' that are compensable and are rightfully part of the Plaintiff's claim.

19.    Defendant has in bad-faith intentionally utilized the fact that Plaintiff added a second story to the residential premises as a legal excuse to escape contractual liability to the Plaintiff for damages the Plaintiff has suffered and for which Defendant is contractually liable.

3

20.     Upon information and belief, Defendant intentionally or negligently slow-walked performance of Defendant's duty to pay for the losses Plaintiff suffered as those losses were defined. Plaintiff and his family were economically forced to reside in adjoining hotel rooms for many months during the rebuild of the demised premises. The length and duration of the rebuild of the premises was proximately the result of Defendant stringing along the payment for the identifiable damages suffered. Plaintiff was in fact forced to self-finance to some extent the rebuild of his residence in an effort to speed up the process of the repair. Nonetheless, the premises is still not 'repaired or replaced' and the Plaintiff was forced to secure a new temporary residence suitable for he and his family. Defendant has failed and refused to compensate the Plaintiff for the reasonable costs associated with suitable living expenses (i.e. a place to live) during the 'repair and replacement' of the demised premises.

21.     Upon information and belief, the Plaintiff asserts that the refusal by the Defendant to afford Plaintiff only adjoining hotel rooms for months on end was part of Defendant's efforts to cut Defendant's costs by forcing Plaintiff economically to accept less for the damages to the Plaintiff's residence than was actually suffered.

22.     Upon information and belief, the Defendant, after repeated complaints from the Plaintiff relative to compensation for 'hidden-damages', agreed to send a third party independent estimator to the Plaintiff's premises to "estimate the damages suffered". However, the independent estimator admitted to the Plaintiff while at the demised residence that his purpose and his instructions were to only justify and confirm the previous estimate of damages, i.e. he was not conducting a fair market, independent, honest appraisal of losses sustained relative to the 'hidden damages'.

23.     Plaintiff's residence is not habitable as such as currently the electric and water is not functional relative to the damaged areas of the home, all of which is proximately the result of the Defendant's unconscionable refusal to pay the Plaintiff for damages the Plaintiff has suffered as a proximate result of the storm damages of August 2011.

24.     Plaintiff is suffering the loss of providing housing for himself and his family and that loss is ongoing.

ALLEGATIONS # 1-24 HEREINABOVE ARE ADOPTED HEREINAFTER AS THOUGH RESTATED IN THEIR ENTIRETY HEREINAFTER:

25.     Defendant is in breach of contract of policy of insurance in the gross estimated sum believed to be in excess $40,000 for the repair and replacement costs unpaid that are associated with the storm damages.

26.     Defendant is liable to the Plaintiff for the damages associated with 'loss of opportunity' in the estimated gross sum of $ 25,000.00, i.e. those losses Plaintiff suffered as a proximate result of funding the costs of rebuilding expense out of pocket that could have and should have been expended on other contracts by the Plaintiff in his chosen occupation as a contractor.

4

27.     Defendant is liable to the Plaintiff for the damages associated with Plaintiff's cost of living and housing in the gross sum estimated to be $10,000.00 (however that sum is continuing in nature as the demised residence is not habitable).

28.     As a proximate result of Defendant's business practices of intentionally or negligently under-cutting the true extent of Defendant's contractual liability to the Plaintiff, Plaintiff has suffered negligent infliction of emotional distress, anguish, and humiliation in the gross sum believed to be in excess of $25,000.00 whereupon Plaintiff nearly suffered a personal bankruptcy solely due to Defendant's refusal to pay to the Plaintiff the benefit of the bargain pursuant to the contract of and policy of insurance.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays as follows:

1.     That process issue to the Defendant according to the law and the Defendant be required to respond accordingly.

2.     That Plaintiff be granted a jury of 6 persons to hear his cause and award damages.

3.     That Plaintiff be awarded damages associated with the breach of contract in the gross sum believed to be in excess of $50,000.00.

3.     That Plaintiff be awarded damages associated with tort theories of recovery in the gross sum of the minimum of $60,000.00.

4.     That Plaintiff be awarded pre-judgment and post-judgment interest and the costs associated with this action.

5.     That Plaintiff be allowed to amend his pleadings as deemed necessary and proper and that his pleadings be deemed to conform to the evidence adduced at a trial of this case.

6.     The Plaintiff be awarded such other, further, and general relief to which the equities demand and justice dictates.


Respectfully submitted on this the⸋ day of August, 2012.

Matt Q. Bastian
Attorney for Mr. Miller
2488-B Park Plus Drive
Columbia, TN 38401
(931) 446-4517
mqbastian@yahoo.com

5

## Surety for Costs

I am surety for the costs of this cause not to exceed $1000.00.

_____
Matt Q. Bastian

## Verification by Oath

I, James Miller, swear and affirm that the foregoing facts, acts and circumstances are the truth and have not been pled out of levity or collusion with any person or party, but are sworn to out of a sincere belief in the equities of my cause.

_____
James Miller

Sworn and subscribed to before me, this the 08/03/12 .

_____
Notary Public

My commission expires: 03 / 25 / 2015

STATE
OF
TENNESSEE
NOTARY
PUBLIC

6



**Alfa Alliance Insurance Corp.**
4480 Cox Road
Glen Allen, Virginia 23060-6718

**HOMEOWNERS DECLARATION**

| Policy Number | Policy Period | |
| --- | --- | --- |
| | From | To |
| HOT 0304179 04 | 05/18/2011 | 05/18/2012 |
| | 12:01 A.M. Standard Time | |

**Transaction**

**RENEWAL DECLARATION**
This Policy is a continuation of a previously issued policy, all forms, as listed, are retained as part of your contract. Any new or replacement forms are attached.

| Named Insured and Address | Agent |
| --- | --- |
| MILLER, JAMES<br>MILLER, MICHELLE<br>628 TRANSIT AVE<br>COLUMBIA, TN 38401-0000 | FOSTER INSURANCE AGENCY<br>P.O. BOX 1434<br>COLUMBIA, TN 38402<br><br>Telephone: 931-388-8365          7300000 |

The Described Location covered by this policy is located at the above address, unless otherwise stated:

628 TRANSIT AVE COLUMBIA TN 38401-0000

### THIS POLICY APPLIES ONLY TO THE COVERAGES FOR WHICH A LIMIT OF LIABILITY IS SHOWN:

| | PROPERTY COVERAGES | | | | PERSONAL LIABILITY COVERAGES | |
| --- | --- | --- | --- | --- | --- | --- |
| Limit of Liability | A. Residence | B. Related Private Structures on the Premises | C. Personal Property | D. Additional Living Expense and Loss of Rent | L. Personal Liability (Each Occurrence) | M. Medical Payments to Others (Each Person) |
| | 206,500 | 20,650 | 144,550 | 41,300 | 300,000 | 2,000 |

| Basic Policy Premium | Additional Premium | Total Premium | Premium for Scheduled Personal Property | Combined Premium | Policy Change | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | | Additional Premium | Return Premium |
| $788.00 | $55.00 | $843.00 | $0.00 | $843.00 | | |

**Subject to forms and endorsements**

| FORM 3 | (2.0) | HL-147 | (1.0) | HL-223 | (6.0) | HL-435 | (1.0) | HL0403 | (05/99) |
| HL0689 | (10/03) | HL-216 | (2.0) | HL-55 | (2.0) | | | | |

**Personal Liability Coverage** (Additional residence premises, if any, located.)

| Construction Frame | | Yr. of Const. 1939 |
| --- | --- | --- |
| Terr. 160 | Prot. Cl. 01 | |
| Deductibles $500 | SECTION I - FLAT DEDUCTIBLE | No. Dwelling Units (Form 4) |

| Name and Address 1st Mortgagee | Name and Address 2nd Mortgagee | Name and Address 3rd Mortgagee |
| --- | --- | --- |
| Loan # 176203943<br>BAC HOME LOANS SERVICING, LP<br>IRAGA ATUGA<br>PO BOX 961206<br>FORT WORTH, TX 76161-0206 | Loan #<br>HERITAGE BANK & TRUST<br>PO BOX 1970<br>COLUMBIA, TN 38402 1970 | |

ACCOUNT DISCOUNT          $118.00

SIGNATURE OF AUTHORIZED REPRESENTATIVE

Issued Date: 03/25/2011          DBM    INSURED COPY
                                 AC7300000    1103242058HOT030417904

## ALFA ALLIANCE INSURANCE CORPORATION

4480 COX ROAD, GLEN ALLEN, VA
23060 - 6718
TEL(804)346-1900
FAX(804)346-1995

## NOTICE OF INFORMATION PRACTICES

It is common practice within the insurance industry for insurance companies to seek information from an outside source about you and any person who may be insured under or applying for an insurance policy. We do not plan to disclose this information to any unaffiliated third party, except as permitted by law.

The law requires that we notify you that we may order a consumer report. However, no information obtained from a consumer report or from your file will be given to anyone without your written consent, except as allowed by law to conduct our business.

You have the right to know what kind of information we keep in our files about you, to have access to it, information, to request a copy of all personal information, and to request correction of inaccurate information.

Upon request, we will provide you with a more detailed notice of our information practices. Please contact us at Alfa Alliance Insurance Corporation, 4480 Cox Road, Glen Allen, VA 23060-6718.

---

## Alfa Alliance Insurance Corporation's
## (One of the Alfa Companies)
## Privacy Notice

Your privacy is important to us. We are committed to giving your non-public personal information all the protection required by law. This notice is to advise you of how we will handle this information.

### INFORMATION WE COLLECT

Non-public personal (financial) information personally identifiable information about you obtained by us in connection with providing products and services to you. It includes information provided by you, obtained by us, or resulting from any transactions with us or others. It does not include information available to the general public. We collect non-public information from the following sources:

1. Information we receive from you on applications or other forms. This information may be received in person, by mail, by phone, by fax, or online.

2. Information about your transactions with us, our affiliates or others. This could include among other things, information to adjust, investigate or settle your insurance claims, your claims history, billing and payment information and coverage selections.

3. Information we receive from consumer reporting agencies. This information is generally used in conjunction with the application process. It may include motor vehicle reports, claims reports and information from a consumer report or investigative consumer report.

### INFORMATION WE SHARE WITH OTHERS

We will only disclose your non-public personal information as permitted or required by law. We may share information about you with third parties as necessary to effect, administer or enforce a transaction that you request or authorize, (ii) third parties in connection with servicing a product or service that you request or authorize, (iii) any of our affiliated companies; (iv) regulatory authorities, (v) consumer reporting agencies, (vi) third parties in order to protect against or prevent actual or potential fraud or unauthorized transactions, (vii) organizations conducting actuarial research studies, (viii) reinsurers, (ix) companies that perform marketing services on our behalf or with whom we have joint marketing agreements, and (x) other third parties as permitted or required by law.

---

### INFORMATION WE SHARE WITHIN ALFA

We may disclose non-public personal information about you to our affiliates to respond to your needs and to provide information about products or services offered by our affiliates. Non-public personal information is treated with the same standards of confidentiality among our affiliates. If you authorize the disclosure of your consumer report or investigative consumer report may be shared with our affiliated insurance companies as part of our underwriting process. Except to the extent permitted by law, we will not disclose credit information from an investigative consumer report or investigative consumer report and report and report and affiliates in order to market additional products to you.

### HEALTH INFORMATION

Except as permitted or required by law, we will not disclose non-public personal health information about you unless you authorize the disclosure.

### HOW WE PROTECT INFORMATION

Our Privacy Policy allows our employees to access non-public personal information only when there is an appropriate reason to do so. We provide products or services, or to otherwise perform their job functions. Employees who misuse this information are subject to disciplinary action. We maintain physical, electronic, and procedural safeguards to guard your non public personal information.

### FURTHER INFORMATION

If you have any questions about this privacy notice, you may write us at Alfa Alliance Insurance Corporation, ATTN: Privacy, 4480 Cox Road, Glen Allen, VA 23060. We may amend this privacy notice at any time, and we will inform you of changes as required by law.

Insured Copy

VM NT 25 09 04

ACT300000   110324  2058  HOTC030417904

This endorsement changes
the policy
– PLEASE READ THIS CAREFULLY –

## PROTECTIVE DEVICES

The premium for this policy includes a credit for:

1. a fire or burglar alarm,

2. an automatic sprinkler system; or

3. another protective device described on the "declarations"

that is installed on the "insured premises". The device must be approved by "us".

"You" agree to maintain the device in working order and to notify "us" promptly when it becomes inoperative or has been removed.

ML-216 Ed 2.0

Copyright MCMXCV, American Association of Insurance Services

INSURED COPY
AG7990000      1100242059HO790041??04

This endorsement changes
the policy
:: PLEASE READ THIS CAREFULLY ::

# CALENDAR DATE OR TIME FAILURE EXCLUSION

1.  The Calendar Date or Time Failure exclusion shown below is added under Exclusions That Apply To Property Coverages, item 2.

    **Calendar Date or Time Failure--** "We" do not pay for loss or damage to property used, in whole or in part, for "business" purposes resulting from the failure of any electronic data processing equipment, computer program, software, media, or data to correctly recognize, interpret, or process any encoded, abbreviated, or encrypted date or time.

2.  If this policy includes endorsement ML-170 or ML 0170, Computer Coverage, the Calendar Date or Time Failure exclusion shown below is added to that endorsement under Perils Excluded:

    "We" do not pay for loss or damage to property covered by this endorsement which is used, in whole or in part, for "business" purposes resulting from the failure of any electronic data processing equipment, computer program, software, media, or data to correctly recognize, interpret, or process any encoded, abbreviated, or encrypted date or time. However, "we" do pay for an ensuing loss that is otherwise covered by this endorsement.

3.  If this policy includes endorsement ML-29 or ML 0029, Farm Liability Coverage, the Calendar Date or Time Failure exclusion shown below is added to that endorsement under Exclusions That Apply To Liability Coverages, item 3.

    "We" do not pay for "property damage"·

    a.  resulting from the failure of any electronic data processing equipment, computer program, software, media, or data to correctly recognize, interpret, or process any encoded, abbreviated, or encrypted date or time; and

    b.  arising from "farming".

ML 0483 05 99

Copyright, American Association of Insurance Services, 1998

INSURED COPY
AC7709000        1105042958H071603417364

This endorsement changes
the policy
**PLEASE READ THIS CAREFULLY**

# LEAD LIABILITY EXCLUSION

## LIABILITY COVERAGES

### EXCLUSIONS THAT APPLY TO LIABILITY COVERAGES

The following exclusions are added under Exclusions That Apply To Coverages L and M:

This policy does not apply to actual or alleged bodily injury that results directly or indirectly from the ingestion, inhalation, or absorption of lead in any form.

This policy does not apply to actual or alleged property damage that results directly or indirectly from any form of lead.

This policy does not apply to any loss, cost, or expense arising out of any request, demand, or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of lead.

This policy does not apply to any loss, cost, or expense arising out of any claim or suit by or on behalf of any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of lead.

ML-223 Ed 6.0

Copyright MCMXCV, American Association of Insurance Services

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# CALENDAR DATE OR TIME FAILURE EXCLUSION

1.  The Calendar Date or Time Failure exclusion shown below is added under Exclusions That Apply To Property Coverages, item 2.

    Calendar Date or Time Failure-- "We" do not pay for loss or damage to property used, in whole or in part, for "business" purposes resulting from the failure of any electronic data processing equipment, computer program, software, media, or data to correctly recognize, interpret, or process any encoded, abbreviated, or encrypted date or time.

2.  If this policy includes endorsement ML-170 or ML 0170, Computer Coverage, the Calendar Date or Time Failure exclusion shown below is added to that endorsement under Perils Excluded:

    "We" do not pay for loss or damage to property covered by this endorsement which is used, in whole or in part, for "business" purposes resulting from the failure of any electronic data processing equipment, computer program, software, media, or data to correctly recognize, interpret, or process any encoded, abbreviated, or encrypted date or time. However, "we" do pay for an ensuing loss that is otherwise covered by this endorsement.

3.  If this policy includes endorsement ML-29 or ML 0029, Farm Liability Coverage, the Calendar Date or Time Failure exclusion shown below is added to that endorsement under Exclusions That Apply To Liability Coverages, item 3:

    "We" do not pay for "property damage"·

    a.  resulting from the failure of any electronic data processing equipment, computer program, software, media, or data to correctly recognize, interpret, or process any encoded, abbreviated, or encrypted date or time, and

    b.  arising from "farming".

ML 0483 05 99

Copyright, American Association of Insurance Services  1999

INSURED COPY
AC730050        1051432USHPT503137264

# LEAD LIABILITY EXCLUSION

## LIABILITY COVERAGES

### EXCLUSIONS THAT APPLY TO LIABILITY COVERAGES

The following exclusions are added under Exclusions That Apply To
Coverages L and M

This policy does not apply to actual or alleged bodily injury that results
directly or indirectly from the ingestion, inhalation, or absorption of lead in
any form.

This policy does not apply to actual or alleged property damage that
results directly or indirectly from any form of lead

This policy does not apply to any loss, cost, or expense arising out of any
request, demand, or order that any insured or others test for, monitor,
clean up, remove, contain, treat, detoxify, neutralize, or in any way respond
to or assess the effects of lead.

This policy does not apply to any loss, cost, or expense arising out of any
claim or suit by or on behalf of any governmental authority for damages
resulting from testing for, monitoring, cleaning up, removing, containing,
treating, detoxifying, neutralizing, or in any way responding to or assessing
the effects of lead.

ML-223 Ed 6.0

Copyright MCMXCV, American Association of Insurance Services

This endorsement changes
the policy
PLEASE READ THIS CAREFULLY

# POLLUTION LIABILITY EXCLUSIONS

## LIABILITY COVERAGES

### EXCLUSIONS THAT APPLY TO LIABILITY COVERAGES

The following is added under Exclusions That Apply To Coverages L and M.

This policy does not apply to:

k. "bodily injury" or property damage that results from the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants into or upon land, water, or air.

However, this exclusion does not apply to bodily injury or property damage that results from the heat, smoke, or fumes of a fire on the insured premises that:

1) becomes uncontrollable or breaks out from where it was intended to be; or
2) (applies only if this policy has been extended to provide coverage for farming ) is set by the insured for the purpose of burning off crop stubble or other vegetation consistent with normal and usual farming practices, and is not in violation of any ordinances or laws.

l. any loss, cost, or expense arising out of any:

1) request, demand, or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of pollutants ; or

2) claim or suit by or on behalf of any governmental authority relating to testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of pollutants .

## DEFINITIONS

If Coverage L has been extended to pay for damages for which an insured is liable by law because of personal injury , the definition of personal injury is deleted and replaced by the following:

Personal injury means false arrest, false imprisonment, wrongful eviction, wrongful entry, wrongful detention, malicious prosecution, misrepresentation, libel, slander, defamation of character, or invasion of privacy.

Personal injury does not mean false arrest, false imprisonment, wrongful eviction, wrongful entry, wrongful detention, malicious prosecution, misrepresentation, libel, slander, defamation of character, or invasion of privacy that arises out of:

a. a communicable disease;

b. the actual, alleged, or threatened sexual molestation of a person; or

c. the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants into or upon land, water, or air.

ML-435 Ed 1.0
Copyright MCMXCV
American Association of Insurance Services

INSURED COPY
AU7900000    110024208510010504175104

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE

(The entries required to complete this endorsement
will be shown below or on the "declarations".)

The aggregate "limit" that applies to the Incidental Property Coverage for Fungi, Wet or Dry Rot, or Bacteria is $___10,000____.

The Coverage L Annual Aggregate Sub-limit for Fungi, Wet or Dry Rot, or Bacteria is $_50,000_.

This policy is amended to include the following "terms". All other "terms" of the policy apply, except as amended by this endorsement.

## DEFINITIONS

1. The following definition is added:

"Fungi" means any kind or form of fungus, including but not limited to mildew and mold, and any chemical, matter, or compound produced or released by a fungus, including but not limited to toxins, spores, fragments, and metabolites such as microbial volatile organic compounds.

2. When Coverage L has been extended to pay for damages for which an "insured" is liable by law because of "personal injury", the following is added to the definition of "personal injury":

"Personal injury" does not mean false arrest, false imprisonment, wrongful eviction, wrongful entry, wrongful detention, malicious prosecution, misrepresentation, libel, slander, defamation of character, or invasion of privacy that results directly or indirectly, in whole or in part, from the actual, alleged, or threatened ingestion of, inhalation of, physical contact with, exposure to, existence of, or presence of "fungi", wet or dry rot, or bacteria.

## PROPERTY COVERAGES

### INCIDENTAL PROPERTY COVERAGES

The following coverage is added.

Fungi, Wet or Dry Rot, or Bacteria -- The coverage set forth below does not apply to "fungi", wet or dry rot, or bacteria that result from fire or lightning.

a. The aggregate "limit" shown in this endorsement for the Incidental Property Coverage for Fungi, Wet or Dry Rot, or Bacteria is the most "we" pay for the total of all loss covered under:

1) the Principal Property Coverages; and
2) the Incidental Property Coverages, except Emergency Removal and, if provided by this policy, Collapse;

caused by or consisting of "fungi", wet or dry rot, or bacteria.

This aggregate "limit" applies regardless of the number of claims made, assessments made, or locations insured under this policy. The aggregate "limit" is the most "we" pay for each consecutive annual period and for any remaining period of less than 12 months, beginning with the inception date of this policy as shown on the "declarations", for the total of all loss, cost, or expense covered under this Incidental Property Coverage. If, however, the policy period is extended for an additional period of less than 12 months, this additional period will be considered part of the preceding period for the purpose of determining the "limit".

This coverage does not increase the "limits" shown for the property covered.

b. The aggregate "limit" set forth under item a. above also applies to any cost or expense.

1) to clean up, contain, treat, detoxify, or neutralize "fungi", wet or dry rot, or bacteria on covered property or remove "fungi", wet or dry rot, or bacteria from covered property;
2) to remove and replace those parts of covered property necessary to gain access to "fungi", wet or dry rot, or bacteria; and,

Copyright, American Association of Insurance Services, Inc., 2000

INSURED COPY
A0J36963.0      110724 2050 J0J088 H7364

3) If there is reason to believe that "fungi", wet or dry rot, or bacteria is present, to test for the existence or level of "fungi", wet or dry rot, or bacteria, or the lack thereof, but only to the extent of that belief. This applies regardless of when such testing is performed.

c. The coverage set forth under items a. and b. above applies only when:

1) such loss, cost, or expense is a result of a Peril Insured Against during the policy period; and

2) all reasonable steps were taken to protect covered property from further damage at and after the time the Peril Insured Against occurred.

d. The "terms" of this Incidental Property Coverage do not apply to covered loss or damage to covered property that is not caused, in total or in part, by "fungi", wet or dry rot, or bacteria, except to the extent that "fungi", wet or dry rot, or bacteria causes an increase in the loss. When "fungi", wet or dry rot, or bacteria causes an increase in such a loss, that increase is subject to the "terms" of this Incidental Property Coverage.

## EXCLUSIONS THAT APPLY TO PROPERTY COVERAGES

1. The following exclusion is added under item 1.:

Fungi, Wet or Dry Rot, or Bacteria -- "We" do not pay for loss, cost, or expense caused by or relating to the existence of or any activity of "fungi", wet or dry rot, or bacteria, except as provided under the Incidental Property Coverage for Fungi, Wet or Dry Rot, or Bacteria. This applies even if the "fungi", wet or dry rot, or bacteria result from or are aggravated by a loss that may be covered by this policy, including but not limited to loss caused by the accidental discharge of liquids or steam from a plumbing, heating, air-conditioning, or automatic fire protective sprinkling system, water heater, or domestic appliance. However, this does not apply to "fungi", wet or dry rot, or bacteria that result from fire or lightning or loss that is covered under the Incidental Property Coverage for Emergency Removal or, if provided by this policy, Collapse

"We" do pay for direct loss caused by a Peril Insured Against that results from "fungi", wet or dry rot, or bacteria.

2. Wear and Tear is deleted and replaced by the following:

Wear and Tear -- "We" do not pay for loss that results from wear and tear, marring, deterioration, inherent vice, latent defect, mechanical breakdown, rust, corrosion, contamination, or smog.

## HOW MUCH WE PAY FOR LOSS OR CLAIM

I Coverage L -- Personal Liability is deleted and replaced by the following:

Coverage L -- Personal Liability --

a. Subject to the Coverage L Annual Aggregate Sub-limit for Fungi, Wet or Dry Rot, or Bacteria, the "limit" shown on the "declarations" for Coverage L is the most "we" pay for loss for each "occurrence". This applies regardless of the number of:

1) persons insured under this policy;

2) parties who sustain injury or damage; or

3) claims made or suits brought.

b. The most "we" pay for the total of all "bodily injury" and "property damage" that arise directly or indirectly, in total or in part, from the actual, alleged, or threatened ingestion of, inhalation of, contact with, exposure to, existence of, or presence of "fungi", wet or dry rot, or bacteria is the "limit" shown in this endorsement as the Coverage L Annual Aggregate Sub-limit for Fungi, Wet or Dry Rot, or Bacteria.

However, this does not apply to:

1) "bodily injury" that results from "fungi" cultivated or harvested for human consumption or food-borne or beverage-borne bacteria that cause illness commonly known as food poisoning (Food-borne or beverage-borne bacteria that cause illness commonly known as food poisoning include but are not limited to Staphylococcus aureus, Salmonella, Clostridium perfringens, Campylobacter, Listeria monocytogenes, Vibro

Copyright, American Association of Insurance Services, 2003

parahaemolyticus, Bacillus cereus,
and Escherichia coli.);

2) "bodily injury" to a "farm
employee" to the extent that
coverage for "bodily injury" to
"farm employees" is provided by
this policy; or

3) "bodily injury" or "property
damage" that results from a slip,
fall, or loss of footing attributable
to a surface made slippery by the
presence of or existence of
"fungi", wet or dry rot, or bacteria.

c. The Coverage L Annual Aggregate
Sub-limit for Fungi, Wet or Dry Rot, or
Bacteria applies regardless of the
number of:

1) "occurrences";
2) "insureds";
3) claims made;
4) suits brought;
5) persons who sustain injury or
whose property is damaged; or
6) locations insured under this policy.

The "limit" shown in this endorsement
as the Coverage L Annual Aggregate
Sub-limit for Fungi, Wet or Dry Rot, or
Bacteria is the most that "we" pay for
each consecutive annual period and for
any remaining period of less than 12
months, beginning with the inception
date of this policy as shown on the
"declarations". If, however, the policy
period is extended for an additional
period of less than 12 months, this
additional period will be considered
part of the preceding period for the
purpose of determining the "limit".

The Coverage L Annual Aggregate
Sub-limit for Fungi, Wet or Dry Rot, or
Bacteria does not increase the
Coverage L "limit".

2. Restoration of Limits does not apply with
respect to payments made:

a. under the Incidental Property Coverage
for Fungi, Wet or Dry Rot, or Bacteria;
or

b. for "bodily injury" or "property
damage" subject to the Coverage L
Annual Aggregate Sub-limit for Fungi,
Wet or Dry Rot, or Bacteria.

ML 0689 10 03

Copyright, American Association of Insurance Services, Inc., 2003

INSURED COPY
AC7180010          1 00209 2089 HOM0000Q0700

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# REPLACEMENT VALUE LOSS SETTLEMENT TERMS

1. "Replacement value" means the cost to repair or replace the property with new property of equivalent kind and quality to the extent practical, without deduction for depreciation.

2. The Replacement Value Terms set forth in this endorsement apply to the following covered property:

   a. Coverage C -- Personal Property.

   b. appliances and window air conditioners;

   c. carpets and window coverings;

   d. awnings and canopies;

   e. antennas; and

   f. the following scheduled classes of personal property if covered under this policy:

      1) jewelry;
      2) furs and garments trimmed with fur or consisting principally of fur;
      3) cameras, projection machines, films, and related articles of equipment;
      4) musical instruments and related articles of equipment;
      5) silverware, goldware, items plated with gold or silver, and pewterware;
      6) golfer's equipment; and
      7) bicycles.

3. The Replacement Value Terms set forth in this endorsement do not apply to the following property:

   a. articles of art or rarity that cannot be duplicated;

   b. memorabilia, souvenirs, collector's items, and similar items whose age or history contribute to its value;

   c. items not maintained in good or workable condition; or

   d. items that are outdated or obsolete and are stored or not being used.

4. Under How Much We Pay For Loss or Claim, item 1.e., Loss Settlement Terms, is deleted and replaced by the following with respect to the property that is subject to the "terms" of this endorsement:

   e. Loss Settlement Terms -- Subject to the "terms" shown under How Much We Pay For Loss or Claim and the "terms" of this endorsement, "we" settle losses according to the Replacement Value Terms. If the Replacement Value Terms do not apply, "we" settle losses according to the Actual Cash Value Terms.

      1) Replacement Value Terms

         a) "We" pay the smallest of the following amounts for each covered item:

            (1) the "replacement value" of the property as defined in this endorsement;
            (2) the amount computed after any special limitation in this policy has been applied to the loss;
            (3) for loss to property covered under Coverage C, the Coverage C "limit"; or
            (4) for loss to scheduled personal property, the "limit" that applies to the item.

         b) When the "replacement value" for each occurrence is more than $500, "we" do not pay for more than the actual cash value of the loss until actual repair or replacement is completed. "You" may make a claim for the actual cash value amount of the loss before repairs are made or replacement is completed. A claim for any additional amount payable under this provision must be made within six months after the loss.

      2) Actual Cash Value Terms -- Actual Cash Value includes a deduction for depreciation, however caused.

         a) The Actual Cash Value Terms apply to all property not subject to the Replacement Value Terms.
         b) The smaller of the following amounts is used in applying the "terms" under Our Limit:

INSURED COPY
AC72002  1        11092426SBHO09O617204

(1) the cost to repair or replace the property with materials of like kind and quality to the extent practical; or

(2) the actual cash value of the property at the time of loss

5. The coverage provided by this endorsement does not increase "our" "limit". All other "terms" of the policy apply.

ML-55 Ed 2.0
Copyright MCMXCV
American Association of Insurance Services

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

## PUNITIVE DAMAGE EXCLUSION

This policy does not apply to a claim or indemnification for punitive or exemplary damages. If a suit seeking both compensatory and punitive or exemplary damages is brought against an "insured" for an "occurrence" covered by this policy, "we" will provide defense coverage.

"We" will not pay for any costs, interest, or damages attributable to punitive or exemplary damages.

All other "terms" of this policy apply.

ML-147 Ed 1.0

Copyright MCMXCV, American Association of Insurance Services

INSURED COPY